## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:09cv268

| | | |
|---|---|---|
| **JAMES F. DORMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **GRAIN DEALERS MUTUAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court upon defendant's Motion to Dismiss and

Motion for Judgment on the Pleadings (#2) and plaintiff's Motion for Leave to Amend

the Complaint (#16). Having carefully considered such motions, reviewed the

pleadings, and conducted a hearing on February 26, 2010, the court enters the

following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.      Facts

On March 24, 2005, the defendant issued a fire insurance policy (#2-1) which

provided fire insurance coverage for a building owned by the plaintiff and which was

being used as a senior citizen center. Complt. ¶ 3, #2-1, p. 2. On April 3, 2005, a fire

occurred at the insured premises which caused substantial damage. Complt. ¶ 4. The

policy of insurance contained a provision that stated:

LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1.    There has been full compliance with all of the terms of this Coverage Part; and

2.    The action is brought within 3 years after the date on which the direct physical loss or damage occurred. (#2-2, p. 3, #16-2, p. 36)

On May 9, 2005, the plaintiff had a telephone conversation with Paul Robbins of the Robbins Adjustment Company, which was followed up by a letter from Mr. Robbins to the plaintiff. (#16-3) In the letter, Mr. Robbins discusses an estimate of the cost of repairs and encloses a Proof of Loss form for the plaintiff's use when he was ready to present his claim. (#16-3) On January 25, 2006, Martha P. Brown, an attorney for the defendant, sent a letter to Mr. D. Dale Howard, an attorney representing the plaintiff. (#16-4) In the letter, Ms. Brown discusses estimates of repairs to the damaged building owned by the plaintiff and requests that Mr. Howard contact Ms. Brown or attorney David Brown, who was also representing the defendant. (#16-4) The letter states, "Grain Dealers would like to resolve this matter and issue payment to Mr. Dorman in the near future." (#16-4) Almost one year later, in a letter dated January 17, 2007, from to Mr. Howard, Mr. Brown states: "As you will recall we spoke approximately a year ago about the above referenced fire loss

sustained by Mr. Dorman at property located in Newland, NC." (#16-5). He further states: "I was hoping that we would have heard something in the interim about this matter. However, we have not heard anything further from you or Mr. Dorman and consequently, we assume you are in agreement with those figures". (#16-5). Mr. Brown then states he is enclosing a check from the defendant in the amount of $135,872.68 payable to Mr. Dorman upon these conditions:

> I am taking the liberty of copying this letter to Mr. Dorman directly in the event you no longer represent him. However, given that my last indication was that you were acting as his counsel, I have enclosed the check to you. Please note that Grain Dealers is not requiring Mr. Dorman to execute any specific release in consideration of this payment. Rather, Grain Dealers is making this payment based on the engineering repair estimates received and without further prejudice to your client's rights". (#16-5)

Mr. Howard responded back to Mr. Brown's letter on September 24, 2007. (#16-6) In this letter, Mr. Howard forwarded two estimates of the costs of repairs for the building, that being a May 25, 2005, estimate and a February 2007 estimate of costs of repairs. (#16-6). Mr. Howard further suggests that a meeting be arranged at the fire loss location to see if the matter could be resolved and if not, then the parties could proceed with the appraisal process under the terms of the policy. (#16-6). A meeting was held at the location of the fire loss on January 31, 2008, between Mr. Brown and Mr. Howard and others concerning the loss. (#16-7). On May 2, 2008, Mr. Howard sent another estimate of the cost of repairs to Mr. Brown and requested Mr. Brown's

response to the letter and the estimate. (#16-8). In the letter, Mr. Howard states "If we cannot reach an agreement soon, then we will need to proceed with the formal appraisal process under the policy". (#16-8) Mr. Brown responded back to Mr. Howard's letter on June 26, 2008, and stated therein the defendant was denying Mr. Dorman's claim based upon the provisions of the policy that required that any legal action would have to be brought within three years after the date on which the loss or damage occurred. (#16-10)

## II.     Procedural History

On May 22, 2009, the plaintiff filed a Complaint against the defendant in the Office of the Clerk of Superior Court of Avery County, North Carolina. In the Complaint, plaintiff alleges one cause of action for breach of contract against defendant based upon defendant's alleged breach of the contract of insurance. Complt. ¶¶ 11-16. The plaintiff alleges defendant denied plaintiff's claim on or about June 24, 2008, and under the provisions of N.C.Gen.Stat. § 58-3-35, that defendant cannot limit the time within which any suit or action may be commenced to less than the period prescribed by law and the time for the filing an action for breach of contract is three years from the date of the breach as provided by N.C.Gen.Stat. §§ 1-52.(1) and 1-15(a). Complt. ¶¶ 14, 15.

On July 16, 2009, defendant filed a Notice of Removal alleging jurisdiction in

the United States District Court based upon diversity of citizenship between plaintiff and defendant. ( Notice of Removal #1). On July 22, 2009, defendant filed a Motion to Dismiss, Motion for Judgment on the Pleadings and Answer to the plaintiff's Complaint. (#2). In the motion, defendant contends the Complaint should be dismissed pursuant to Rule 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure because plaintiff's action is barred by the terms of the policy and by the three year statute of limitations contained in N.C.Gen.Stat. §§ 58-44-15(c) & 1-52(12). (#2, p. 2). Defendant supported the motion with a memorandum of law. (#3) Plaintiff responded on August 10, 2009, again contending the statute of limitations was three years from the date of defendant's alleged breach of June 24, 2008, and that the motion should be denied. (#5 Response). On February 12, 2009, plaintiff, with permission of the court and through substitute counsel, provided a supplemental response to the motion of the defendant. (#15). In the supplemental response, plaintiff contends defendant is equitably estopped from asserting the statute of limitations. Plaintiff further moved to amend his Complaint to allege a cause of action for equitable estoppel in addition to the claim for breach of contract. (#16-1). Defendant responded to plaintiff's supplemental response and the motion to amend complaint on February 19, 2010. (#19, 20). The undersigned held a hearing in regard to the motions on February 26, 2010. At the hearing, substitute counsel for plaintiff

stated that after the filing of the supplemental response and the Motion to Amend Complaint, he had interviewed plaintiff's previous counsel, Mr. Howard. Plaintiff's present counsel discovered Mr. Howard had filed the Complaint in May of 2009, because it was his opinion (Mr Howard's) that the statute of limitations did not begin to run until the defendant had denied the claim of the plaintiff on June 24, 2008, and not because of any acts of defendant or defendant's counsel .

## III.  Applicable Standards

### A.      Rule 12(b)(6): Failure to State a Claim

At the hearing, counsel for plaintiff argued the "no set of facts" standard. In reviewing whether a claim has been stated, the "no set of facts" standard enunciated by the Supreme Court in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), and later revisited in <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989), has been specifically abrogated by the Court in recent decisions.

First, in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court held that the "no set of facts" standard first espoused in <u>Conley</u>, <u>supra</u>, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival."     <u>Id.</u>, at 563.   The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to

dismiss whenever the pleadings left open the possibility that a plaintiff might later

establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration

in original).

Post Twombley, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must

allege facts in his complaint that "raise a right to relief above the speculative level."

Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment]
> to relief" requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not

survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further

factual enhancement." Id., at 557. Instead, a plaintiff must now plead sufficient facts

to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling,

see Twombly, 550 U.S. at 563, and Felman Production Inc. v. Bannai, 2007 WL

3244638, at *4 (S.D.W.Va. 2007), it again visited the Rule 12(b)(6) pleading standard

in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009). In Ashcroft, the

Court held that Rule 8 "demands more than an unadorned, the

defendant-unlawfully-harmed-me accusation." Id., S.Ct., at 1949. The Court explained

that, "to survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where plaintiff "pleads facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in the complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

## B.    Rule 12(c): Judgement on the Pleadings Standard

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In resolving a motion for judgment on the pleadings, the court must accept all of the nonmovant's factual averments as true and draw all reasonable inferences in its favor. Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004); Atwater v. Nortel Networks, Inc., 394 F. Supp. 2d 730, 731 (M.D.N.C. 2005).

Judgment on the pleadings is warranted where the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. <u>Bradley</u>, 329 F. Supp. 2d at 622. The standard is similar to that used in ruling on a Rule 12(b)(6) motion "with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." <u>Continental Cleaning Serv. V. United Parcel Serv., Inc.</u>, 1999 WL 1939249, at *1 (M.D.N.C. April 13, 1999) (internal citations omitted).

In resolving a motion for judgment on the pleadings, the court may rely on admitted facts in the pleadings, documents attached to the pleadings, and facts contained in materials of which the court may take judicial notice. <u>Bradley</u>, 329 F. Supp. 2d, at 622 (noting that the Court should consider documents attached to the pleadings); <u>Hebert Abstract Co. v. Touchstone Prop., Ltd.</u>, 914 F.2d 74, 76 (5th Cir. 1990) (holding that court should consider pleadings and judicially noticed facts). Where an insurance policy is "integral to and explicitly relied upon in the complaint," the policy itself should be considered along with the factual allegations of the complaint and answer. <u>Colin v. Marconi Commerce Sys. Employees' Retirement Plan</u>, 335 F. Supp. 2d 590, 596 (M.D.N.C. 2004). The court has considered the policy of insurance, which was made an exhibit to defendant's motion.

## IV. Discussion

### A. Introduction

As the court did at the hearing, the court will consider the Motion to Amend and the Motion to Dismiss together inasmuch as they involve the same underlying issue, which is whether plaintiff can allege any plausible set of facts upon which a finder of fact could determine: (1) that the statute of limitations had not expired; and (2) whether the defendant should be estopped from asserting the statute of limitations due to equitable estoppel. Plaintiff's assertion of the theory of equitable estoppel is problematic inasmuch as, at all times, he was represented by counsel in the claims process. Plaintiff's former attorney stated in earlier filings:

> Our position is that their reliance on N.C.G.S. § 1-52 (12) does not result in the Statute of Limitations commencing to run from the date of the fire.
>
> * * *
>
> This cause of action has been filed within the three-year period from the date of the Breach of Contract as alleged, June 24, 2007.[1]

Docket Entry #5, at p. 3. While this court allowed new counsel additional time to review the file and interview prior counsel, new counsel for plaintiff conceded, quite properly, at the hearing that the reason the action was not filed until May 22, 2009, was previous counsel's opinion regarding the applicable law and not due to any facts or occurrences which would support a theory of equitable estoppel.

**B.     Statute of Limitations**

---

[1]  The court assumes that plaintiff's previous counsel actually meant June 24, 2008.  See docket entry #5, page 2.

The defendant contends the plaintiff's Complaint should be dismissed because the Complaint was not filed within the time allowed by the applicable statute of limitations. The defendant references both contractual and statutory provisions in support of its contention. The policy itself provides any complaint must be filed within three years of the date of loss and contains the following language:

> B.   The Legal Action Against Us Condition is replaced by the following:
>
> LEGAL ACTION AGAINST US
>
> No one may bring a legal action against us under this Coverage Part unless:
>
> 1.   There has been full compliance with all of the terms of this Coverage Part; and
>
> 2.   The action is brought within 3 years after the date on which the direct physical loss or damage occurred.  Insurance policy #2-2, p. 3 and 16-2, p. 36.

This contractual provision is required to be contained in all fire insurance policies issued by insurers which provide such insurance coverage in the state of North Carolina.  Section 58-44-15 of those statutes, entitled "Fire Insurance Contracts; Standard Policy Provisions," provides as follows:

> (b) No policy or contract of fire insurance except contracts of automobile fire, theft, comprehensive and collision, marine and inland marine insurance shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in this State, unless it conforms in substance with all of the provisions, stipulations, agreements,

and conditions of the policy form in subsection (c) of this section. N.C.G.S. § 58-44-15(b).

N.C.Gen.Stat. § 58-44-15. Subsection 58-44-15(c) then requires that each policy of fire insurance contain in lines 158 through 161 the following provision:

> **Suit**. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

N.C.Gen.Stat. § 58-44-15(C). The twelve month period of limitations found in that provision has been modified by Chapter 1-52(12) which, in the version in effect at the time of the fire loss in this case, provided:

> Within three years an action----(12) Upon a claim for loss covered by an insurance policy which is subject to the three-year limitation contained in lines 158 through 161 of the Standard Fire Insurance Policy for North Carolina, G.S. 58-44-15(c).

N.C.Gen.Stat. § 1-52(12). A further North Carolina statute which is applicable is Chapter 1-52(16) which provides:

> Within three years an action ---- (16) Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

N.C.Gen.Stat. § 1-52(16).

Defendant has supported its contention that both by the terms of the contract and by the clear language of the statute, the Complaint is subject to dismissal due to the fact that it is barred by the statute of limitations.   The fire loss in this case occurred on April 5, 2005, and the Complaint was not filed until May 22, 2009, which was more than one year after the three year period expired.

The plaintiff contends, however, that  his claim is not barred by the contract or the statutes.  In support, the plaintiff states the controlling statute is Section 1-52(1), which provides:

Within three years an action— (1) Upon a contract, obligation or liability arising out of a contract, express or implied, except those mentioned in the preceding sections or in G.S. 1-53(1).


N.C.Gen.Stat. § 1-52(1) . The plaintiff also cites Section 58-3-35(b):

**§58-3-35.  Stipulations as to jurisdiction and limitation of actions.**

(a) No insurer, self-insurer, service corporation, HMO, or MEWA, licensed under this Chapter shall make any condition or stipulation in its contracts or policies concerning the court or jurisdiction in which any suit or action on the contract may be brought.

(b) No insurer, self-insurer, service corporation, HMO or MEWA, licensed under this Chapter shall limit the time within which any suit or action referred to in subsection (a) of this section may be commenced to less than the period prescribed by law.

(c)   All conditions and stipulations forbidden by this section are void.  (1899, c. 54, §. 23, 106; 1901, c. 391, s. 8; Rev., s. 4809; C.S., s. 6290; 2001-334, s. 1; 207-298, s. 7.1) (Version in effect on the date of the fire loss )

N.C.G.S. § 58-3-35(b).

In a nutshell, plaintiff contends that the statute of limitations did not begin to run until defendant told plaintiff, in the letter of June 24, 2008, that it would not pay the plaintiff's claim. (# 5, p. 2).  This contention finds no legal support and appears to be contrary to what is now well settled law in North Carolina.  In <u>Marshburn v. Associated Indemnity Corp.</u>, 84 N.C. App. 365 (1987), plaintiffs alleged that his home was struck by lightning on July 21, 1979.  Plaintiffs reported the incident to the defendant who was their homeowner insurance carrier and received a check in payment for the damage which had been discovered at that time.  In September of 1982, plaintiffs noticed further damage to their home.  On February 21, 1985, plaintiffs filed a complaint seeking payment under the fire insurance policy issued by defendant.  The defendant made a motion for summary judgment which was allowed.  Upon appeal, the North Carolina Court of Appeals stated:

> We therefore hold, in accord with what appears to be the majority view, that the phrase "inception of the loss," when used in a policy of insurance as in the present case, means that the policy limitation period runs from the date of the occurrence of the event out of which the claim for recovery arose.  *Annot.*, 24 A.L.R.3d 1007, 1059 (1969 & 1985 Supp.); 18A *Couch on Insurance* 2d § 75:88 (Rev. Ed. 1983).  *See, e.g.*, *Closser v. Penn Mut. Fire Ins. Co.*, 457 A.2d 1081 (Del. 1983); *Gremillion v. Travelers Indemnity Co.*, 256 La. 974, 240 So.2d 727 (1970); *Margulies v. Quaker City Fire & Marine Ins. Co.*, 276 App.Div.

695, 97 N.Y.S.2d 100 (1950). A claim filed after the contractual time limitation has expired is barred, regardless of its merit, unless the insurer, by its conduct, waives or is estopped from relying upon the limitation provision of the policy. *Meekins v. Aetna Ins. Co.*, 231 N.C. 452, 57 S.E.2d 777 (1950). The insured's failure or inability to discover damage resulting from the insured-against casualty until after the contractual limitations period has run is immaterial and does not operate to toll or restart the limitations period. *See*, *Sager Glove Corp. V. Aetna Ins. Co.*, 317 F.2d 439 (7th Cir.), *cert. denied*, 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed2d 165 (1963); *Thames Realty Corp. v. Massachusetts Fire & Marine Ins. Co.*, 16 Misc. 2d 747, 184 N.Y.S.2d 170 (1959).

Id., at 370. In addressing the issue of the application of Section 1-52(16), the court

determined that Section 1-52(12) was the proper statutory provision to apply in regard

to a complaint filed based upon a homeowner's insurance policy:

> G.S. 1-52(16) became effective 1 October 1979. 1979 Sess. Laws, c. 654, s. 3. Its enactment was wholly independent of the provisions of G.S. 1-52(12). The language of the statute does not require that G.S. 1-52(12) be applied in conjunction with or subject to the provisions of G.S. 1-52(16) and we decline to read such a requirement into the language of the statute without any clear authority for doing so. Moreover, G.S. 1-52(16) provides, by its own express terms, that it is to be applied "unless otherwise provided by statute." In our view, the Standard Fire Insurance Policy limitation provision, contained in G.S. 1-52(12) and G.S. 58-176(c) and reproduced in plaintiffs' policy of homeowners' insurance, constitutes a limitation period "otherwise provided by statute" which precludes the applicability of G.S. 1-52(16) to the present case.

Id., at 372.

In <u>Lanier v. State Farm Fire & Casualty Company</u>, 2009 WL 926914

(W.D.N.C. Mar. 31, 2009),[2] United States District Judge Richard Voorhees granted

---

[2]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

summary judgment for defendant insurance carrier under similar circumstances and considered the application of N.C.Gen.Stat. § 58-3-35. In <u>Lanier,</u> the evidence showed that plaintiff had purchased homeowner's fire insurance coverage from defendant. Within the period of the policy plaintiff's house was destroyed by fire on February 15, 2004. Plaintiff filed a claim with defendant on April 23, 2004, which was denied by defendant on November 2, 2004. On October 30, 2007, plaintiff filed a complaint for breach of contract and bad faith against defendant. Defendant moved for summary judgment, which was allowed. In ruling on the motion, Judge Voorhees stated:

> The statute of limitations begins to run upon the "inception of the loss." In this case, the parties agree that the phrase "inception of the loss" refers to the date of the occurrence of the event out of which the claim arises-*i.e.*, the date of the fire. *See Marshburn v. Assoc. Indem. Corp.*, 84 N.C.App. 365, 353 S.E.2d 123, 126 (1987). Similarly, Plaintiff's bad faith claim is triggered by the date of Plaintiff's actual loss. *See Page*, 628 S.E.2d at 430. Thus, it is undisputed that the limitations period for both of Plaintiff's causes of action began on February 15, 2004. Plaintiff's insurance claim was submitted on April 23, 2004. State Farm notified Lanier of its denial of his claim on November 2, 2004. (Compl. ¶ 13; Exh. B at 10-11) Lanier filed the instant lawsuit on October 30, 2007, more than three years after the fire. Therefore, absent a tolling of the statutory limitations period, Plaintiff's cause of action is barred.

<u>Id.</u>, at *3.

In considering any application of N.C.Gen.Stat. § 58-3-35 or N.C.Gen.Stat. § 1-52(1), Judge Voorhees found the statute must be read in accordance with the standards of N.C.G.S. § 58-44-15.

> As explained in greater detail by the North Carolina Supreme Court, all fire insurance policies must adhere to the standards described within N.C. Gen. Stat. § 58-44-15. *See F & D Co. V. Aetna Ins. Co.*, 305 N.C. 256, 287 S.E.2d 867, 870 n. 2 (N.C. 1982) (fire insurance cases may be distinguished from cases affected by § 58-31 because fire insurance policies are standardized and adopted by the legislature); *Lloyd v. Grain Dealers Mutual Ins. Co.*, 2007 WL 1599087, (2007) (fire insurance contract is valid and consistent with N.C. Gen. Stat. §§ 58-3-35 and 1-52(1)).

Id., at *4.

The date of the fire loss to the plaintiff's building in this case was April 5, 2005. Applying the contract of insurance and the statutes would require the plaintiff's complaint be filed by April 3, 2008. The complaint was not filed until May 22, 2009. The provisions of the contract, the applicable statutes, and the case law all point unerringly in favor of the undersigned recommending to the district court that the motions of the defendant be allowed as to the plaintiff's claim for breach of contract.

## C. Equitable Estoppel

Plaintiff, through substitute counsel, requested an opportunity to amend his responsive brief to present an additional contention, to wit, that defendant is equitably

estopped from asserting the contractual provisions and the statutes of limitations. Plaintiff was allowed to amend his brief to assert such contention and filed a motion to amend his Complaint to assert that contention. "Equitable estoppel can be applied when an insurer, by its conduct, waives or is estopped from relying upon the limitations period in the policy". <u>Marshburn</u>, <u>supra</u>. In <u>Hawkins v. M & J Finance Corp.</u>, 238 N.C. 174 (1953), the North Carolina Supreme Court set forth the elements of the doctrine of equitable estoppel.

> The doctrine of estoppel by conduct-estoppel in pais-rests upon principles of equity. It is designed to aid the law in the administration of justice when without its aid injustice would result, the theory being that it would be against the principles of equity and good conscience to permit a party against whom the estoppel is asserted to avial himself of what must otherwise be his undisputed legal rights. *Long v. Tranthan*, 226 N.C. 510, 39 S.E.2d 384; *McNeely v. Walters*, 211 N.C. 112, 189 S.E. 114; *Scott v. Bryan*, 210 N.C. 478, 187 S.E. 756; *Stone v. Bank of Commerce,* 174 U.S. 412, 19 S.Ct. 747, 43 L.Ed. 1028.
>
> Therefore, in determining whether the doctrine of estoppel applies in any given situation, the conduct of both parties must be weighed in the balances of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity. As to these, the essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the acts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of

the trust as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially. *North Carolina Self-Help Corp. V. Brinkley*, 215 N.C. 615, 2 S.E.2d 889; *American Exchange Nat. Bank v. Winder*, 198 N.C. 18, 150 S.E. 489; *Boddie v. Bond*, 154 N.C. 359, 70 S.E. 824; 19 Am. Jur., Estoppel, Sections 42 and 46.

Id., at 177-78.

Other cases have also set forth the principles of equitable estoppel. "As a general matter, principles of equitable tolling may, in the proper circumstances, apply to excuse a plaintiff's failure to comply with the strict requirements of a statute of limitations." Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir.2000). Equitable tolling is available only in "those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003). Such "rare instances," id., would include

situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.

Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990). In this case, it appears that plaintiff is attempting to argue that *his previous attorney* was induced or tricked by defendant into allowing the statute of limitations deadline to pass.

This potential contention fails as a matter of law inasmuch as plaintiff cannot

seek equitable tolling based on the errors of his own counsel. The Court of Appeals for the Fourth circuit has made clear

that "a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding." *Harris*, 209 F.3d at 331. A majority of other circuits agree. *See Merritt v. Blaine*, 326 F.3d 157, 169 (3d Cir.2003)FN11 (applying general rule that "attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling" (internal quotation marks omitted)); *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir.2002) ("Ineffective assistance of counsel generally does not warrant equitable tolling."); *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir.2002) ("[C]ounsel's erroneous interpretation of the statute of limitations provision cannot, by itself, excuse the failure to file [the] habeas petition in the district court within the one-year limitations period."); *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.2001) ("[A]ttorney error [is] inadequate to create the 'extraordinary' circumstances equitable tolling requires."); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.2001) ("We conclude that the miscalculation of the limitations period by Frye's counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling."); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir.1999) (holding that a lawyer's miscalculation of the limitation period was not a valid basis for equitable tolling); *Sandvik v. United States*, 177 F.3d 1269, 1272 (11th Cir.1999) (refusing to apply equitable tolling where late filing was caused by attorney's use of ordinary mail to send petition less than a week before it was due); *Gilbert by Gilbert v. Sec. of Health & Human Servs.*, 51 F.3d 254, 257 (Fed.Cir.1995) ("The negligence of Gilbert's attorney does not justify applying equitable tolling.").

* * *

Moreover, the actions of Rouse's attorneys are attributable to Rouse, and thus, do not present "circumstances external to the party's own conduct," *Harris*, 209 F.3d at 330. Rouse's argument that the errors of his former *habeas* counsel are external to his conduct because he did not participate in their decisions misses the mark. Former counsel's

errors are attributable to Rouse not because he participated in, ratified, or condoned their decisions, but because they were his agents, and their actions were attributable to him under standard principles of agency. *See Coleman v. Thompson*, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (explaining that attorney error, short of ineffective assistance of counsel, is, under standard principles of agency, attributable to the client); *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) ("[A] defendant [who] is represented by counsel whose performance is not constitutionally ineffective ... bear[s] the risk of attorney error ...."); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) ("Under our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." (internal quotation marks omitted)).

Rouse, supra, at 248-249 (footnotes omitted).

Taking and considering the argument to its fullest extent, the court has considered plaintiff's argument in the context that his own previous attorney was induced or tricked by his adversary's alleged misconduct into allowing the filing deadline to pass. While equitable tolling appears to be totally inapplicable where all parties are represented by counsel, taking the pleadings in the Complaint and proposed Amended Complaint in a light most favorable to plaintiff he simply has made no plausible allegations that counsel for defendant in any way misled or tricked counsel for plaintiff. Indeed, the allegations and argument have revealed to the court that counsel for defendant, in his capacity as counsel for the insurer, at all times conducted himself in a manner consistent with the requirements of the North Carolina General

Statutes in adjusting claims. There has been presented absolutely no allegation in either the Complaint or the proposed Amended Complaint that counsel for defendant, the defendant, or any other agent of the defendant somehow misled or induced former counsel for plaintiff to fail to file this action within the time required. Indeed, counsel for defendant *alerted* counsel for plaintiff to the missed statute of limitations deadline *months* before counsel for plaintiff filed this action. Further, it is undisputed that where counsel for plaintiff allowed a favorable settlement offer (to wit, a six-figure check the negotiation of which would not in any way release defendant) to sit for a year without response, it was counsel for defendant who contacted counsel for plaintiff by letter, the language of which would have set off warnings bells to plaintiff's former counsel that immediate action was required.

While the reported federal cases mainly deal with civil actions for *habeas corpus* relief, North Carolina law is fully consistent with federal decisions that have addressed proper application of equitable tolling where the plaintiff is represented by counsel. Reinhardt v. Women's Pavilion, Inc., 102 N.C.App. 83, 87 (1991)("plaintiff at all times relevant in this matter was represented by counsel of her choice. Defendants neither directly nor indirectly told her that they would take care of her claim. . . . We conclude that the instant facts do not support the application of the doctrine of equitable estoppel.") See also Willis v. J. M. Davis Industries, Inc. 280

N.C. 709, 714 (1972) ("Plaintiff was represented by counsel, and both plaintiff and counsel knew or should have known of the twelve months' limitation.")

North Carolina courts have held that a party asserting estoppel must plead and later prove that such party had:

> (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

State v. Rich Food Serv. Inc., 139 N.C.App. 691, 703 (2000). In order to invoke such equitable doctrine, "a plaintiff must have been induced to delay filing of the action by the misrepresentations of the defendant." Jordan v. Crew, 125 N.C.App. 712, 720 (1997). There are no allegations in the Complaint or the proposed Amended Complaint that have proffered that defendant's counsel or defendant, either intentionally or negligently, misrepresented or concealed some material fact which induced plaintiff or his former counsel to delay filing this action.

During the hearing of the Motion to Dismiss and the Motion to Amend, the undersigned discussed with plaintiff's present counsel and defendant's counsel both motions in detail. Plaintiff's present counsel, in full compliance with Rule 3.3 of the Rules of Professional Conduct of the North Carolina State Bar, reported to the court that after the Motion to Amend the Complaint had been filed, he had been allowed to

conduct an interview a few days before the hearing of the motions with the plaintiff's former attorney, Mr. Howard. Mr. Howard told plaintiff's present counsel that Mr. Howard had been of the opinion the statute of limitations did not begin to run until the defendant had denied the claim in the letter of June 26, 2008. (#16-10) Plaintiff's present attorney further reported that Mr. Howard had not been mislead by any statement or conduct of the defendant's attorney during the negotiations between the parties concerning the claim. Upon inquiry by the court, the attorney for the defendant reported he had made no representations to Mr. Howard or the plaintiff concerning the statute of limitations or any forbearance of the application of the statute of limitations during the negotiations. These statements by present counsel for the plaintiff and counsel for the defendant are in full compliance with the Rules of Professional Conduct. These statements and the conduct of plaintiff's present counsel and defendant's counsel are examples of the high standard of conduct of attorneys who are members of the bar of the United States District Court for the Western District of North Carolina.

Based upon the allegations the undersigned can simply not find any plausible facts have been proffered for either amending the Complaint or which would support an equitable tolling of the statute of limitations.

**D.    Motion to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks leave to amend a complaint "leave shall be freely given when justice so requires." As the Supreme Court stated in <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962), liberal reading of the direction of Rule 15 is for there to be a "free" allowance of motions to amend: motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party... futility of amendment, etc." <u>Ward Electronics Service, Inc. v. First Commercial Bank</u>, 819 F.2d 496, 497 (4th Cir. 1987). In this case, allowing amendment would be futile as the allegations could not survive a Motion to Dismiss under the standards established in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (May 18, 2009).

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Dismiss and Motion for Judgment on the Pleadings (#2) be **GRANTED**, that plaintiff's Motion for Leave to Amend the Complaint (#16) be **DENIED** as futile, and that this action be **DISMISSED WITH PREJUDICE** in its

entirety as time barred.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: March 17, 2010

Dennis L. Howell
United States Magistrate Judge